IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| KELLEN ALLISON CATTLE CO., LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SHAMROCK, *et al.*,<br><br>    Defendants. | 2:24-CV-241-Z-BV |

## MEMORANDUM OPINION AND ORDER

Before the Court are five Motions to Dismiss, filed by Defendants (1) Davis Gas Processing, Inc. ("Davis") (ECF No. 34); (2) Aztec Oil, Inc. ("Aztec") (ECF No. 35); (3) City of Shamrock ("Shamrock") (ECF No. 38); (4) Ashland, Inc. ("Ashland") (ECF No. 39); and (5) Troy Potts (ECF No. 62). Also before the Court is Defendant West Texas Gas Utility, LLC's ("WTG") Motion for Judgment on the Pleadings (ECF No. 36). Plaintiffs responded to the Motions on February 25, 2025, and April 28, 2025. The Motions are now ripe.

Having considered the Motions, briefing, and relevant law, the Court:

- **GRANTS** Troy Potts' Motion to Dismiss (ECF No. 62);

- **GRANTS in part** Shamrock's Motion to Dismiss (ECF No. 38) as to its 42 U.S.C. Section 1983 claims and **DENIES in part** for lack of jurisdiction;

- **DENIES** Davis, Aztec, and Ashland's Motions to Dismiss (ECF Nos. 34, 35, 39) for lack of jurisdiction;

- **DENIES** WTG's Motion for Judgment on the Pleadings (ECF No. 36) for lack of jurisdiction; and

- **REMANDS** the case—now containing only state law claims asserted by Shamrock, Davis, Aztec, Ashland, and WTG—to the 31st District Court of Wheeler County, Texas.

## BACKGROUND

### I. Factual History

Plaintiffs' suit arises out of the alleged death and depreciation of cattle following their consumption of contaminated water from the City of Shamrock's municipal water line. ECF No. 29 at 3. Following a shortage of water from their own wells, Plaintiffs contacted the City of Shamrock seeking emergency connection to the municipal water line owned by WTG. *Id.* at 4. After the City employees performed a water test, indicating the water was safe for use, Plaintiffs began providing water from the line to their cattle. *Id.* Plaintiffs allege that "nearly 650 cattle have died" after drinking the water, later found to contain "toxic levels of sulfate exceeding 1000 ppm." *Id.* Plaintiffs filed their Original Petition on October 2, 2024, of which Shamrock received notice five days later. *Id.* at 6. The following day, Plaintiffs discovered that their "water connection . . . [was] rendered inaccessible" and their garbage-service dumpsters "had been removed from [their property]." *Id.*

Plaintiffs allege that "Defendants [failed] to properly maintain and adequately test the Water Line prior to allowing Plaintiffs to use this water with livestock," and that contamination of the water was caused by Defendant Ashland's[1] operation of a "carbon black facility on the property immediately south of [Plaintiffs' property], through which the Water Line traverses." *Id.* at 5. To that end, Plaintiffs assert state-law claims of negligence and nuisance against Shamrock, Davis, Aztec, Ashland, and WTG, as well as a breach-of-contract claim against Shamrock. *Id.* at 7–10. Further, Plaintiffs assert 42 U.S.C. Section 1983 claims against Shamrock and Shamrock's City Manager and Public Works Director Troy Potts, contending that termination of their water

---

[1] Ashland transferred the relevant property to Aztec in 1984. ECF No. 29 at 5. Aztec then transferred the property to WTG in 2021. *Id.* WTG then transferred the property to its subsidiary, Davis. *Id.*

and waste removal services constitutes retaliation in violation of the First Amendment. *Id.* at 10–11.

## II. Procedural History

Plaintiffs filed their Original Petition on October 2, 2024, in the 31st Judicial District Court of Wheeler County, Texas. ECF No. 3 at 2. Plaintiffs filed their First Amended Original Petition on October 22, 2024, adding a federal cause of action pursuant to 42 U.S.C. Section 1983. *Id.* at 1. Shamrock timely removed the case to federal court on the basis of the newly added federal cause of action. *Id.* at 2.

Following removal, Plaintiffs filed an additional amended complaint (the "Second Amended Complaint"). ECF No. 29. The Court found that this second amendment was improper, as "an amendment made in state court prior to a case's removal to federal court counts toward a party's right to amend 'once as a matter of course.'" ECF No. 65 at 2–3. Thus, Plaintiffs were required to—and did—properly file a motion for leave to file their Second Amended Complaint. ECF No. 68. The Court granted this motion, causing the Second Amended Complaint to serve as the operative document for purposes of all pending Motions. ECF No. 69.

## LEGAL STANDARD

### I. Rule 12(b)(6) Motion to Dismiss

Defendants Davis, Aztec, Shamrock, Ashland, and Troy Potts move to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts should "construe facts in the light most favorable to the nonmoving party"—here, Plaintiffs—"as a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141,

147 (5th Cir. 2009)). To overcome qualified immunity at this stage, Plaintiffs "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm alleged and that defeat a qualified immunity defense with equal specificity." *Torns v. City of Jackson*, 622 F. App'x 414, 416 (5th Cir. 2015).

### II. Rule 12(c) Motion for Judgment on the Pleadings

Defendant WTG moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Under that rule, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Rule 12(c) motions are subject to the same standard of review as motions to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co., LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). A plausible claim to relief "must be enough to raise a right to relief above the speculative level." *Id.* This standard is plaintiff friendly. *See id.* (stating that the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff."). Even so, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

ANALYSIS

### I. Plaintiffs' Federal Law Claims under 42 U.S.C. Section 1983

Plaintiffs argue that the City of Shamrock "was sued by a private party and at the first possible opportunity, and with no notice of any kind, the municipality retaliated by suspending critical services." ECF No. 41 at 21. Plaintiffs maintain that this behavior demonstrates how Shamrock and Mr. Potts, Shamrock's City Manager and Public Works Director, "retaliated against them for exercising their right under the First Amendment to petition the government." *Id.* at 41. The City of Shamrock, along with Mr. Potts, disagrees.

4

To state a claim under 42 U.S.C. Section 1983, a plaintiff must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)); 42 U.S.C. § 1983. The need for an actual violation of a plaintiff's constitutional rights remains constant regardless of whether suit is brought against a governmental entity for municipal liability or against a defendant in their individual capacity.

### A. Plaintiffs' claims against the City of Shamrock for municipal liability under 42 U.S.C. Section 1983

Plaintiffs raise a municipal liability claim—also known as a *Monell* claim—against the City of Shamrock. ECF No. 29 at 10–11; *see Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). Municipal liability under Section 1983 requires proof of three elements: (1) "an official policy;" (2) "a policymaker;" and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

The first element requires that Plaintiffs allege facts showing the existence of an official policy, of which there are two forms: (1) a "policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority;" or (2) a "persistent, widespread practice of city officials or employees" that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984). The second element requires that Plaintiffs allege facts showing that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). The identified policymaker "must have final policymaking authority." *Rivera v. Hous. Indep. Sch.*

5

*Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The third element requires Plaintiffs to allege facts establishing that "municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiffs claim that "the City retaliated against them for exercising their rights under the First Amendment to petition the government." ECF No. 41 at 22. Shamrock argues that Plaintiffs have "failed to identify any municipal policy or custom" and "plead no more than an isolated incident," foreclosing assertion of a successful *Monell* claim. ECF No. 38 at 26. By contrast, Plaintiffs contend that "a single action is sufficient to satisfy the requirement of stating a policy" where such action is made by a government's authorized decisionmaker. ECF No. 41 at 24. Here, Plaintiffs believe Mr. Potts is the final policymaker as Shamrock's City Manager and Public Works Director—thus, Mr. Potts' decision to terminate Plaintiffs' utilities constitutes an official policy under *Monell*. ECF No. 41 at 24–25.

The Court agrees with Shamrock and declines to find municipal liability in the instant case. "*Monell* is a case about responsibility," and serves to reinforce the notion that municipalities should not always escape liability for deprivations of federal rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Where a municipality embraces an official policy or custom that causes the deprivation of a constitutional right, liability follows. But the imposition of such liability is not unlimited. Isolated incidents of misconduct are generally insufficient to show the existence of an official custom or policy—instead, a pattern of similar injurious incidents by the municipality must be alleged. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005). This aligns with the reasoning of *Monell* that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. 469 at 480.

6

In rare circumstances, however, "a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question." *Doe v. Burleson Cnty.*, 86 F.4th 172, 176 (5th Cir. 2023). The Fifth Circuit has defined a final policymaker as one "that decides the goals for a particular city function and devises the means of achieving those goals." *Id.*

This is precisely what Plaintiffs allege but fail to show. Although Mr. Potts serves as the City Manager and the Public Works Director for the City of Shamrock, he is not a final policymaker. Under Texas law, the city council—not the city manager—constitutes the final policymaker. *Groden v. City of Dall.*, 826 F.3d 280, 286 (5th Cir. 2016). Because the City of Shamrock has both a city council and a city manager, the "responsibility for making law or setting policy" has been reserved by state law for the governing body: here, the Shamrock City Council. *Bolton v. City of Dall.*, 541 F.3d 545, 550 (5th Cir. 2008); SHAMROCK, TX, CITY ORDINANCES § 1(a) (1975) ("The Governing Body, as referred to in this ordinance, shall mean the duly elected City Council and Mayor of the City of Shamrock."). And Plaintiffs provide no indication that Shamrock delegated policymaking power to Mr. Potts. Rather, Shamrock City Ordinances identify the City Manager as "the *administrative* head of the Municipal Government," making clear that the position is executive rather than legislative. *Id.*; ECF No. 41 at 25 (emphasis added). For these reasons, and because "[t]he finality of an official's action does not . . . automatically lend it the character of a policy," Mr. Potts cannot be considered a final policymaker. *Id.*

Thus, to show that the City of Shamrock acted unconstitutionally, Plaintiffs must show that the City Council promulgated or ratified an unconstitutional policy. *Groden*, 826 F.3d at 286. Anticipating the Court's determination that Mr. Potts is not a final policymaker, Plaintiffs also argue that the City Council and the Mayor ratified the unconstitutional actions and policy of Shamrock "by continuing to deprive Plaintiffs of water and trash removal service." ECF No. 41 at

25–26. But this argument also fails. Although a municipality "may be liable 'in extreme factual situations' when [a final policymaker] ratifies a subordinate's decision," a finding of such ratification "requires more than the defense of a decision or action shown to be unconstitutional later the fact." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019). Ratification can suffice for *Monell* liability only if a final policymaker "approves a subordinate's decision *and the basis for it.*" *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024) (emphasis in original) (quoting *Allen v. Hays*, 65 F.4th 736, 749 n.10 (5th Cir. 2023)). Cabining ratification in this way prevents its expansion into a theory of *respondeat superior*, which "*Monell* does not countenance." *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004). Here, Plaintiffs' briefing on this issue—comprising a single sentence—fails to demonstrate that the Shamrock City Counsel or Mayor ratified the actions of Mr. Potts or the basis for his actions. Failing to allege facts that rise above the level of mere acquiescence by the City Counsel and Mayor, Plaintiffs' ratification argument fails.

Mr. Potts does not constitute a final policymaker with regard to the decision to terminate Plaintiffs' utilities; accordingly, municipal liability under *Monell* cannot attach to that decision. For the above reasons, the Court **GRANTS in part** Shamrock's Motion to Dismiss as to Plaintiffs' Section 1983 claims.

### B. Plaintiffs' claims against Mr. Potts in his official and his individual capacity

Plaintiffs are suing Mr. Potts in both his individual and official capacity under 42 U.S.C. Section 1983. ECF No. 29 at 3. Under Section 1983, private citizens are permitted to sue public officials for violations of their constitutional or federal statutory rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). But Plaintiffs' official capacity claims against Mr. Potts are duplicative of those asserted against the City of Shamrock. *See supra* Section I(A). An official-capacity suit is treated just as a suit against an entity—"[i]t is clearly established that a suit against a

8

government official in his or her official capacity is 'only another way of pleading an action against an entity of which [the official] is an agent.'" *Jones v. Dall. Cnty.*, 47 F. Supp. 3d 469, 500 (N.D. Tex. 2014) (quoting *Monell*, 436 U.S. at 690 n.55). Thus, Plaintiffs' official-capacity claims against Mr. Potts are duplicative of their claims against the City of Shamrock and will not be considered.

Accordingly, the Court turns to Plaintiffs' individual-capacity claims against Mr. Potts. Where public officials are sued in their individual capacities, the affirmative defense of qualified immunity often shields them from liability by providing "breathing room to make reasonable but mistaken judgments, and protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). A state official is entitled to qualified immunity unless the allegations demonstrate both that (1) "the official violated a statutory or constitutional right," and that (2) "the right was clearly established at the time" of the violation. *Johnson v. Bowe*, 856 F. App'x 487, 492 (5th Cir. 2021); *Sanders v. Gibson*, No. 23-11196, 2025 WL 1029440, at *2 (5th Cir. Apr. 7, 2025). Courts have discretion to decide which of the two prongs to consider first. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

Plaintiffs argue that the termination of their municipal utility services after they initiated suit constitutes retaliatory action. ECF No. 20 at 10–11. Plaintiffs assert that "[t]he right to petition the government without fear of redress is clearly established." ECF No. 70 at 16. By contrast, Mr. Potts argues that "there is no precedent which clearly sets forth that discontinuing service of allegedly contaminated water constitutes retaliation" and thus, "Plaintiffs have failed to set forth a constitutional violation." ECF No. 62 at 21. This then means that "there is no clearly established right to have a city manager continue municipal utility service to a customer who has alleged the water being provided is contaminated and causing livestock to die," foreclosing Plaintiffs' ability to defeat Mr. Potts' invocation of qualified immunity. *Id.* at 20.

9

The Court chooses to address the "clearly established" prong of the qualified immunity test first. Once a public official raises the defense of qualified immunity, the burden rests with the plaintiff to rebut it. *Zarnow*, 500 F.3d at 407. Here, Plaintiffs have failed to satisfy that burden. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Diaz v. Cantu*, 123 F.4th 736, 747–48 (5th Cir. 2024) (quoting *Ashcroft*, 563 U.S. at 741). As clearly stated by the Fifth Circuit, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *De Leon v. Munoz*, No. 24-40215, 2025 WL 957500, at *6 (5th Cir. Mar. 31, 2025). And because the operative question is "whether the violative nature of *particular* conduct is clearly established, our inquiry must be undertaken in light of the specific conduct of the case, not as a broad general proposition." *Id.* (internal marks omitted).

With this inquiry in mind, it cannot be said that Mr. Potts' decision to terminate Plaintiffs' municipal services amounts to a clearly established violation of the law. Neither Plaintiffs nor Mr. Potts cite—and the Court is not aware of—any case law demonstrating that the specific actions taken by Mr. Potts constitute a clearly established violation of law. *See, e.g.*, *Ashcroft*, 563 U.S. at 742 (recognizing that "clearly established" requires controlling authority or "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))). And while a case directly on point is not necessarily required, Plaintiffs must still satisfy their burden to find a case in their favor "that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018). They do not. A clearly established right must be defined with specificity—so, Plaintiffs' abstract statements "untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020).

For the above reasons, Mr. Potts is entitled to qualified immunity. Accordingly, the Court need not reach the second prong of the qualified-immunity test or any of Mr. Potts' additional arguments. The Court **GRANTS** Mr. Potts' Motion to Dismiss Plaintiffs' Section 1983 claims.

### II. Plaintiffs' State Law Claims

The Court has granted Shamrock's and Mr. Potts' Motions to Dismiss regarding Plaintiffs' Section 1983 claims against them. All that remains in the instant case are state law claims: the Motions to Dismiss filed by Davis, Aztec, and Ashland—as well as the Motion for Judgment on the Pleadings filed by WTG—solely concern Plaintiffs' claims of negligence and nuisance, and the Motion to Dismiss filed by Shamrock now solely concerns Plaintiffs' claims of negligence, nuisance, and breach of contract. *See* ECF Nos. 34, 35, 36, 38, 39 (concerning claims of negligence based on res ipsa loquitur, general negligence, negligence per se, nuisance, and breach of contract).

Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, and supplemental jurisdiction over all other claims so related that they form part of the same case or controversy. *See* 28 U.S.C. §§ 1331, 1367. However, it is within a district court's wide discretion to decline to exercise supplemental jurisdiction over state law claims where the federal claims have been dismissed. 28 U.S.C. § 1367; *Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th Cir. 2005). In fact, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

In determining whether remand of the pendant state-law claims here is appropriate, the Court "considers the statutory factors set forth by 28 U.S.C. § 1367(c) and the common law factors of judicial economy, convenience, fairness, and comity." *McConnell v. City of Fort Worth Firefighters'*, No. 4:15-CV-880, 2016 WL 6304806, at *1 (N.D. Tex. Jan. 15, 2016) (quoting *Enochs*

11

*v. Lampasas Cnty.*, 641 F.3d 155, 158–59 (5th Cir. 2011)). The statutory factors under subsection (c) are: "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Id.*

At least two subsections of the statutory remand factors, as well as numerous common-law factors, support remand of the state-law claims. Although this case likely does not raise novel or complex issues of state law under Section 1367(c)(1), subsections (c)(2) and (c)(3) certainly apply. Plaintiffs' numerous state law claims predominate over the single, federal Section 1983 claim, dismissed pursuant to the instant Order. *See Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 748–49 (5th Cir. 2014) (remanding state law claims where the case failed to raise novel or complex issues of law, and the sole federal claim was dismissed). As no federal issues remain in this case, the interests of federalism and comity favor remand to state court. Further, litigating the cases in Texas state court is no more inconvenient or prejudicial to the parties than litigating the case in this Court. *Enochs*, 641 F.3d at 160. For these reasons, the Court declines to exercise jurisdiction over the pendant state-law claims and **REMANDS** this case to the 31st District Court of Wheeler County, Texas.

CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Troy Potts' Motion to Dismiss (ECF No. 62);
- **GRANTS in part** Shamrock's Motion to Dismiss (ECF No. 38) as to its 42 U.S.C. Section 1983 claims and **DENIES in part** for lack of jurisdiction;
- **DENIES** Davis', Aztec's, and Ashland's Motions to Dismiss (ECF Nos. 34, 35, 39) for lack of jurisdiction;

- **DENIES** WTG's Motion for Judgment on the Pleadings (ECF No. 36) for lack of jurisdiction; and
- **REMANDS** the case—now containing only state law claims asserted by Shamrock, Davis, Aztec, Ashland, and WTG—to the 31st District Court of Wheeler County, Texas.

**SO ORDERED.**

May 2, 2025

*[signature]*

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE